Filed 10/21/24  P. v. Green CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BROUNCHE STEPHAN GREEN,<br><br>    Defendant and Appellant. | B332107<br><br>Los Angeles County<br>Super. Ct. No. NA069734 |

        APPEAL from an order of the Superior Court of Los Angeles County, Tomson T. Ong, Judge. Affirmed.

        Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

In 2006, a jury convicted defendant and appellant Brounche Stephen Green of five felonies arising from acts of domestic violence and witness dissuasion directed at his pregnant girlfriend and her children. Because Green had sustained two prior strike convictions for shooting into an inhabited dwelling and robbery, the trial court sentenced him under the Three Strikes law. The court also imposed three one-year prior prison term enhancements.

In 2023, the trial court resentenced Green under Penal Code section 1172.75 by striking the three prior prison term enhancements.[1] The court denied Green's *Romero*[2] motion and reimposed his remaining sentence of 75 years to life in state prison. On appeal, Green argues the trial court abused its discretion by denying his *Romero* motion. He also contends the court was required to dismiss at least one prior strike in light of Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch, 721, § 1). We reject these arguments and affirm the judgment.

## PROCEDURAL BACKGROUND

In 2006, a jury convicted Green of inflicting corporal injury on a spouse/cohabitant (§ 273.5, subd. (a)); assault with a deadly weapon or instrument (§ 245, subd. (a)(1)); making criminal

---

1    All undesignated statutory references are to the Penal Code. Effective June 30, 2022, the Legislature renumbered section 1171.1 to section 1172.75. (Stats. 2022, ch. 58, § 12.) There were no substantive changes to the statute. Section 1172.75 renders legally invalid most previously imposed one-year prior prison term enhancements. (See § 1172.75, subd. (a).)

2    *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

threats (§ 422); dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1)); and false imprisonment (§ 236). The jury also found Green sustained two prior strike convictions and found three prior prison term allegations true. (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i); 667.5, subd. (b).)

Under the Three Strikes law, the trial court sentenced Green to five consecutive sentences of 25 years to life (125 years to life total), plus three one-year prior prison term enhancements, after which a different panel of this court stayed two of the five life terms, reducing Green's sentence to 75 years to life plus the three one-year enhancements. In 2023, the trial court struck the three one-year enhancements under section 1172.75, and reimposed the remaining sentence of 75 years to life. The 75 years to life sentence the court reimposed consisted of three consecutive terms of 25 years to life for the following three convictions: corporal injury to a spouse/cohabitant; making criminal threats; and dissuading a witness from testifying.

Green timely appealed.

## FACTUAL BACKGROUND

We take judicial notice of our opinion, written by a different panel of this court, resolving Green's direct appeal. (*People v. Green* (Jan. 23, 2008, B194137) [nonpub. opn.] (*Green I*); Evid. Code, § 452, subd. (a).) The following summary of the prosecution evidence adduced at Green's trial is taken from *Green I*.

In December 2005, Green was living with Trisha Abdullah-Raheem and her three sons, who were ten, seven, and four years old. On December 26, 2005, Green and Abdullah-Raheem argued for hours. Among other things, Green had accused Abdullah-Raheem of cheating on him. At various times during the day, Green physically threatened Abdullah-Raheem, including telling

3

her that he intended to kill her. He also told her to shut the children up, or he would shut them up. At one point, when Abdullah-Raheem was in the kitchen with a knife, Green violently assaulted her, took the knife from her, and threw it, almost hitting one of the children. Abdullah-Raheem was five months pregnant at the time. (*Green I*, *supra*, B194137.)

When Abdullah-Raheem tried to leave the apartment with the children, Green told her he would kill her if she left. Green grabbed her by her hair, threw her against the wall, then threw her to the floor where he started to choke her. Abdullah-Raheem lost consciousness. After Abdullah-Raheem regained consciousness, one of her children ran outside to try to get help. Green ran after him, brought him back into the apartment, and locked the door. Green took Abdullah-Raheem to the bathroom, ran water over her face, and again told her he would kill her if she left. (*Green I*, *supra*, B194137.)

Eventually, Abdullah-Raheem convinced Green to lie down to watch a movie, and he fell asleep. Abdullah-Raheem's mother called her, and her mother called the police. Abdullah-Raheem and her boys left the apartment. Police took Abdullah-Raheem to the hospital because she was having contractions and her face was swollen. (*Green I*, *supra*, B194137.)

Afterward, Abdullah-Raheem moved out of state. In January 2006, Green called her, told her she did not have to testify against him, and asked her not to. Later, a friend of Green's called Abdullah-Raheem and said essentially the same thing. (*Green I*, *supra*, B194137.)

# DISCUSSION

## I. The trial court did not abuse its discretion in denying Green's *Romero* motion

On appeal, Green argues the trial court erred by denying his *Romero* motion and declining to strike one of his strike priors. For the reasons discussed below, we reject this contention.

### A. Relevant Proceedings

As noted above, in 2023, the trial court resentenced Green under section 1172.75 because his original sentence included three one-year prior prison term enhancements. Before denying Green's *Romero* motion, the court stated it had considered approximately 4,000 pages of information provided by the California Department of Corrections, Green's letter to the court, and Green's motion for resentencing under section 1172.75. Defense counsel added Green had tried to reform himself and hoped to reenter society.

The court stated Green had a "very checkered history in his prison record." In 2016, he twice refused to provide a urine sample for drug testing and also tested positive for a controlled substance. Also in 2016, Green blind-sided and assaulted another inmate in the kitchen, beating him until he was unconscious. In 2017, Green possessed a cellular phone. Regarding Green's convictions, the court noted the offenses were serious or violent felonies; the victim had suffered traumatic injury; and Green had tried to dissuade the victim from reporting the assault. Green was convicted of felonies in 1993, 1994, 1996, and 2002. The court also noted Green went to prison in 1994, 1996, and 2002; and the (then) current offenses occurred in 2005. The court found Green posed a danger to the community as shown by the prison assault

in 2016. The court noted its view that Green had not changed because in 2005 Green choked Abdullah-Raheem until she lost consciousness, then in 2016 Green beat his fellow inmate until he lost consciousness. Having concluded Green's criminal record and the violent nature of his offenses made him a danger to society, the trial court denied Green's *Romero* motion.

### B. Applicable Legal Principles

A trial court must make its decision to strike or not strike a prior conviction by considering factors that are intrinsic to the Three Strike law's sentencing scheme. (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) The factors a trial court must consider include: (1) the nature and circumstances of the current conviction; (2) the nature and circumstances of the prior strike convictions; and (3) the defendant's "background, character, and prospects[.]" (*Ibid.*) If the defendant falls outside the spirit of the Three Strikes law, the court may, in furtherance of justice, treat the defendant "as though he had not previously been convicted of one or more serious and/or violent felonies." (*Ibid.*; see also *Romero, supra*, 13 Cal.4th at pp. 529-530; § 1385, subd. (a).) We review a trial court's denial of a *Romero* motion for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 373.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

### C. Analysis

We reject Green's argument that the denial of his *Romero* motion was an abuse of discretion. The record does not suggest, as Green contends, that the court was unaware of or disregarded any relevant mitigating factors in making its ruling. Rather, the

6

record shows the court appropriately balanced the relevant factors. The court reasonably concluded that, in light of the violent nature of Green's offenses against Abdullah-Raheem and her children, his other criminal history, which included beating an inmate unconscious, and his character/prospects, which included a troubling history of serious uncontrolled violence, he posed a danger to society and thus fell within the spirit of the Three Strikes law. (See *Williams*, *supra*, 17 Cal.4th at p. 161.)

Green summarizes his argument that the trial court abused its discretion by denying his *Romero* motion as follows: "[I]n looking at [Green's] case as a whole, including the circumstances surrounding both his prior and most recent offenses, his age at the time of the first strike conviction, trauma in his childhood, his minimal history of violations during his sixteen year incarceration, with only one inciden[t] of violence, eight years ago, and his record of self-improvement while incarcerated, the court abused its discretion in not striking one of the priors in furtherance of justice." Although Green is correct that his case involved various potential mitigating factors, this does not render the trial court's ruling arbitrary or irrational. Rather, a review of the record demonstrates the court reached a reasonable sentencing decision based on an analysis of relevant factors and public safety concerns. These public safety concerns were valid in light of the particularly violent and threatening nature of Green's offenses against his pregnant girlfriend and cohabitant, her three small children, and his fellow inmate.

And to the extent Green suggests the trial court erred by not explicitly discussing every potentially relevant factor in denying the *Romero* motion, we are not persuaded. "While a court must explain its reasons for striking a prior (§ 1385, subd. (a); see

*Romero, supra,* 13 Cal.4th 497, 531), no similar requirement applies when a court declines to strike a prior [citation]." (*In re Large* (2007) 41 Cal.4th 538, 550.) "'The absence of such a requirement merely reflects the legislative presumption that a court acts properly whenever it sentences a defendant in accordance with the [T]hree [S]trikes law.'" (*Ibid.*)

For these reasons, the trial court's denial of Green's *Romero* motion was not an abuse of discretion.

## II. Senate Bill No. 81

Green next argues the trial court erred under Senate Bill No. 81 (SB 81) by not dismissing one of his prior strikes. For the reasons discussed below, we disagree.

Effective January 1, 2022, SB 81 amended section 1385, subdivision (c)(2), which now requires sentencing courts to "consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the *enhancement*, unless the court finds that dismissal of the *enhancement* would endanger public safety . . . ." (Italics added.) Green argues the trial court erred by giving no apparent weight to subdivision (c)(2)(C), which mandates enhancements that could result in a sentence of over 20 years be dismissed (as mentioned above, based on Green's strikes, the trial court imposed three consecutive sentences of 25 years to life in state prison).

We are unpersuaded. The amended language of the statute makes clear that it applies only to *enhancements*. Our Supreme Court has long held the Three Strikes law "articulates an alternative sentencing scheme for the current offense rather than

8

an enhancement." (*Romero, supra,* 13 Cal.4th at p. 527.)
Numerous Courts of Appeal have construed SB 81 in accordance
with the above-quoted language of *Romero,* and we agree with
those cases. (See *People v. Dain* (2024) 99 Cal.App.5th 399, 410-
411, review granted May 29, 2024, S283924[3]; *People v. Olay*
(2023) 98 Cal.App.5th 60, 67-69; *People v. Burke* (2023) 89
Cal.App.5th 237, 243-244.) We therefore reject Green's argument
that SB 81 should apply to his sentence, as it was imposed under
the Three Strikes law, and did not include any enhancements.
We likewise reject Green's argument that the cases rejecting his
position were wrongly decided, as those cases are clearly
supported by the plain language of the statute.

---

[3]     Review was granted in *People v. Dain* on a different issue
than the one presented here.

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

CURREY, P. J.

We concur:

COLLINS, J.

MORI, J.